# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BETTY D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01711-TWP-TAB |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Betty D.[2] requests judicial review of the final decision of the Commissioner of the

Social Security Administration (the "SSA"), denying her application for Supplemental Security

Income ("SSI") under the Social Security Act.  For the following reasons, the Court **remands** the

decision of the Commissioner.

## I.    PROCEDURAL BACKGROUND

On January 27, 2017, Betty D. filed an application for SSI, alleging a disability onset date

of August 25, 2015.  ([Filing No. 10-2 at 17](#).)  Her application was initially denied on June 16,

2017, ([Filing No. 10-4 at 2](#)), and upon reconsideration on November 2, 2017, ([Filing No. 10-4 at](#)

[11](#)).  Administrative Law Judge Kevin M. Walker (the "ALJ") conducted a hearing on April 2,

2019, at which Betty D., represented by counsel, and a vocational expert ("VE"), appeared and

---

[1] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

testified.  (Filing No. 10-2 at 33-70.)  The ALJ issued a decision on April 24, 2019, concluding that Betty D. was not entitled to receive benefits.  (Filing No. 10-2 at 13-28.)  The Appeals Council denied review on May 4, 2020.  (Filing No. 10-2 at 3.)  On June 24, 2020, Betty D. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner denying her benefits.  (Filing No. 1.)

## II.   <u>STANDARD OF REVIEW</u>

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[3]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184).  At step four, if the claimant can perform her past relevant work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327.  For the purpose of judicial review, "substantial

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects.  Cases may reference the section pertaining to disability insurance benefits, such as in *Craft*, which cites 20 C.F.R. § 404.1545(a)(1).  539 F.3d at 676.  Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.945(a)(1).  The Court will not usually reference the parallel section but will take care to detail any substantive differences applicable to the case.

evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III.   FACTUAL BACKGROUND

When Betty D. filed, she alleged that she could no longer work because of degenerative disc disease, a herniated disc, foot and ankle injuries, a left ankle cyst, torn ligaments and tendons, depression, anxiety, hypertension, and extreme leg pain after standing for a short time. (Filing No.

10-6 at 5.)  She was 50 years old when she filed her application.[4]  (Filing No. 10-2 at 26.)  She has

a tenth-grade education and was unable to earn a GED.  (Filing No. 10-2 at 41.)  She has worked

as a retail cashier, parts assembler, and in fast food service.  (Filing No. 10-6 at 6.)  The relevant

evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need

not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed

below.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. §

416.920(a)(4) and concluded that Betty D. was not disabled.  (Filing No. 10-2 at 28.)  At step one,

the ALJ found that Betty D. had not engaged in substantial gainful activity[5] since January 27,

2017, the application date.  (Filing No. 10-2 at 19.)  At step two, the ALJ found that Betty D. had

"the following severe impairments: degenerative joint disease, torn ligaments and tendons, and

cyst affecting the left foot and ankle; degenerative disc disease; carpal tunnel syndrome; obesity;

depression; and anxiety."  (Filing No. 10-2 at 19 (citation omitted).)  At step three, the ALJ found

that Betty D. did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments.  (Filing No. 10-2 at 19.)  After step three but

before step four, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR 416.967(b)
> except she can occasionally lift and carry 20 pounds and frequently lift and carry
> 10 pounds; her ability to push and pull is unlimited except for the weights indicated;
> and she can stand or walk for up to six hours in an eight-hour workday, and she can
> sit for up to six hours in an eight-hour workday.  She can occasionally climb ramps,
> stairs, ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel,
> crouch, and crawl.  She must have no exposure to unprotected heights or hazardous

---

[4] SSI is not compensable before the application date.  20 C.F.R. § 416.335.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 416.972(a).

machinery.  She is able to perform semi-skilled work that can be learned in 90 days or less, and she is capable of occasional interaction with the public.

([Filing No. 10-2 at 22](#).)  At step four, the ALJ found, considering the VE's testimony and Betty D.'s RFC, that she could not perform her past relevant work as a cook.  ([Filing No. 10-2 at 26](#).)  At step five, the ALJ found, considering the VE's testimony and Betty D.'s age, education, work experience, and RFC, that she could perform other work with jobs existing in significant numbers in the national economy in representative occupations such as an order filler, general office clerk, and security guard.  ([Filing No. 10-2 at 27](#).)

## IV.    DISCUSSION

Betty D. makes two assertions—arguing that the ALJ failed to properly: (1) explain why the limitations assessed by two consultative examiners were not included in his RFC finding, ([Filing No. 12 at 16-19](#)); and (2) consider her diagnosis of complex regional pain syndrome, ([Filing No. 12 at 20-22](#)).  The Court will address the arguments in reverse order as necessary to resolve the appeal.

## A.    Complex Regional Pain Syndrome

SSR 03-2p (S.S.A. October 20, 2003), 2003 WL 22814447, at *1, provides guidance evaluating disability based on a "unique clinical syndrome that may develop following trauma" that is referred to as either Reflex Sympathetic Dystrophy Syndrome ("RSDS") or Complex Regional Pain Syndrome ("CRPS"), which the SSA considers to be synonymous diagnoses.  The ruling explains:

> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity.  It can also result from diseases, surgery, or injury affecting other parts of the body.  Even a minor injury can trigger RSDS/CRPS.  The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma.  Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone.  It is characteristic of this

syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual.  When left untreated, the signs and symptoms of the disorder may worsen over time.

Although the pathogenesis of this disorder (the precipitating mechanism(s) of the signs and symptoms characteristic of RSDS/CRPS) has not been defined, dysfunction of the sympathetic nervous system has been strongly implicated.

The sympathetic nervous system regulates the body's involuntary physiological responses to stressful stimuli.  Sympathetic stimulation results in physiological changes that prepare the body to respond to a stressful stimulus by "fight or flight."  The so-called "fight or flight" response is characterized by constriction of peripheral vasculature (blood vessels supplying skin), increase in heart rate and sweating, dilatation of bronchial tubes, dilatation of pupils, increase in level of alertness, and constriction of sphincter musculature.

Abnormal sympathetic nervous system function may produce inappropriate or exaggerated neural signals that may be misinterpreted as pain.  In addition, abnormal sympathetic stimulation may produce changes in blood vessels, skin, musculature and bone.  Early recognition of the syndrome and prompt treatment, ideally within 3 months of the first symptoms, provides the greatest opportunity for effective recovery.

*Id*. at *1-2.  In 2014, Betty D. sprained her left ankle, was originally placed in a boot, and eventually released to work in an air sport brace that she was to wean herself off of within a month.  (Filing No. 10-7 at 178.)  An MRI of her left ankle revealed a stable osteochondral lesion and cyst.  (Filing No. 10-10 at 47.)  On February 28, 2017, an orthopedic evaluation concluded that the lesion was radiographically healed, there was no support for Betty D.'s concerns of bone cancer in the joint, and the ongoing "symptoms [that] she is experiencing in the left lower extremity appear to be related to lumbar radiculopathy."  (Filing No. 10-7 at 192.)  She was noted to have made minimal improvement with physical therapy and it was recommended that she consider lumbar epidural steroid injections.  *Id*.  On July 18, 2017, Betty D.'s treating provider recorded that she had reported left foot and ankle pain from an injury two years ago that "simply comes and goes but never quite gets fully healed."  (Filing No. 10-9 at 4.)

On November 15, 2017, Betty D.'s primary care physician, Rakesh H. Patel, M.D., diagnosed her with CRPS.  (Filing No. 10-11 at 31.)  Dr. Patel explained that she had chronic radicular lower back pain with an MRI showing lumbar arthropathy, as well as "chronic refractory left foot and ankle pain with history of trauma and symptoms suggestive of left foot mild complex regional pain syndrome . . . ."  (Filing No. 10-11 at 31.)  The Seventh Circuit had held that an "ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability."  *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (collecting cases).  The Seventh Circuit has also explained that the ALJ has a duty to confront potentially dispositive evidence since "the ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do."  *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985).  The ALJ did not mention the diagnosis in the decision.

SSR 03-2p also explains:

RSDS/CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings, as discussed above [and repeated below].  RSDS/CRPS may be the basis for a finding of "disability."  Disability may not be established on the basis of an individual's statement of symptoms alone.

For purposes of Social Security disability evaluation, RSDS/CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant:

• Swelling;

• Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);

• Abnormal hair or nail growth (growth can be either too slow or too fast);

• Osteoporosis; or

• Involuntary movements of the affected region of the initial injury.

2003 WL 22814447, at *4.  Dr. Patel's most detailed examination of Betty D.'s left foot revealed "[p]ositive allodynia left foot with hypersensitivity[6] on nonpainful stimuli, positive hyperalgesia with pressure on left foot, intact range of motion of left ankle with some hyperlaxity, intact dorsalis pedis, mild duskiness lateral aspect otherwise normal skin turgor[.]"  (Filing No. 10-11 at 30.)  The examination documented one of the clinical signs, autonomic instability—by the skin color changes in the affected foot—that is all that is needed, present at any time after the injury, to establish CRPS as a medically determinable impairment.  Dr. Patel also reviewed an x-ray that demonstrated another sign, swelling, by showing "mild inflammation with degenerative arthritic change present [in the] distal metatarsal."  (Filing No. 10-8 at 174; *see* Filing No. 10-11 at 6 (Dr. Patel's review).)  As such, Betty D.'s diagnosis met the SSA's requirements to be considered as a medically determinable impairment, but it was entirely neglected by the ALJ.

Betty D. has established harm.  As she points out, the ALJ's analysis that her pain complaints were out of proportion to the objective signs of injury is characteristic of CRPS according to the SSA's guidance discussed above.  For example, the ALJ explained that there had not been any "substantial worsening" demonstrated by the record since Betty D. was released to work in January 2014 after the most recent injury.  (*See* Filing No. 10-2 at 25.)  The ALJ has not demonstrated that he considered the unique condition when analyzing the relevant record.

Moreover, Dr. Patel consistently recorded that Betty D. had a gait that was antalgic to the left, which is consistent with her left foot condition.  (Filing No. 10-11 at 24 (October 18, 2017);

---

[6] SSR 03-2p also explains that "extreme sensitivity to touch or pressure" is an associated symptom of CRPS, but it is not an objective clinical sign that can be used to establish CRPS as a medically determinable impairment.  2003 WL 22814447, at *6.

Filing No. 10-11 at 30 (November 15, 2017); Filing No. 10-11 at 13 (December 13, 2017); Filing No. 10-11 at 53 (January 17, 2018); Filing No. 10-11 at 47 (March 15, 2018); Filing No. 10-11 at 17 (June 14, 2018).)  A gait that was regularly disturbed by pain would appear inconsistent with the ALJ's RFC finding that Betty D. could consistently stand/walk for six hours in eight-hour workday.  The ALJ gave substantial weight to the reviewing consultants' assessments that Betty D. could perform light exertional work.  (Filing No. 10-2 at 26.)  The consultant who completed the most recent review concluded that Betty D. could stand and/or walk for six hours in eight-hour workday.  (Filing No. 10-3 at 25.)  However, the consultant did not have the benefit of reviewing Dr. Patel's records including the diagnosis of CRPS or the relevant clinical findings.  (*See* Filing No. 10-3 at 18-22.)

Accordingly, remand is necessary for further consideration of Betty D.'s CRPS, its associated symptoms, and effect on her physical RFC.

**B.     Other Arguments**

Having found remand is necessary based on Betty D.'s CRPS argument, the Court declines to provide a thorough analysis of her remaining arguments concerning two consultative examiners' statements.  However, in the interest of providing guidance on remand, the Court addresses one further aspect of the ALJ's decision that was not raised by Betty D.  The ALJ also gave considerable weight to the opinions of the reviewing psychological consultants.  (Filing No. 10-2 at 26.)  Both reviewing psychological consultants concluded that Betty D. "would appear to work best alone, in semi-isolation from others as part of a small group."  (Filing No. 10-3 at 13; Filing No. 10-3 at 29.)  The ALJ did not include any limitations in Betty D.'s mental RFC that are consistent with the reviewing consultants' opinions, nor did the ALJ acknowledge this aspect of their opinions.

Accordingly, further consideration and explanation of Betty D.'s mental RFC is necessary on remand.

## V.    **CONCLUSION**

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date:   9/10/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov